1   **BLUMENTHAL, NORDREHAUG & BHOWMIK**
      Norman B. Blumenthal (State Bar #068687)
2     Kyle R. Nordrehaug (State Bar #205975)
      Aparajit Bhowmik (State Bar #248066)
3   2255 Calle Clara
    La Jolla, CA 92037
4   Telephone: (858)551-1223
    Facsimile: (858) 551-1232
5
    Attorneys for Plaintiff
6

7

8

9

10

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13

14  JASON MAITLAND, an individual,      Case No. **SACV10-00374 CJC (FMOX)**
    on behalf of himself, and on behalf of
15  all persons similarly situated,      MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
16              Plaintiffs,               MOTION FOR PRELIMINARY
                                          APPROVAL OF CLASS SETTLEMENT
17  vs.

18  MARRIOTT INTERNATIONAL,              Hearing Date: April 16, 2012
    INC., a Delaware Corporation, and    Hearing Time: 1:30 p.m.
19  Does 1 to 10, Inclusive,
                                          Judge:      Hon. Cormac J. Carney
20              Defendants.               Court No.:  9B

21                                        Action Filed:     March 26, 2010

22

23

24

25

26

27

28

---

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
SACV10-00374

# **TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     DESCRIPTION OF THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     PLAN OF ALLOCATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.      THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
        PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.     The Role Of The Court In Preliminary Approval Of A Class Action
               Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.     Factors To Be Considered In Granting Preliminary Approval . . . . . . . 11

               1.     The Settlement Is the Product of Serious, Informed and
                      Noncollusive Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

               2.     The Settlement Has No "Obvious Deficiencies" and Falls
                      Within the Range for Approval . . . . . . . . . . . . . . . . . . . . . . . 13

               3.     The Settlement Does Not Improperly Grant Preferential Treatment
                      To The Class Representative or Segments Of
                      The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

               4.     The Stage Of The Proceedings Is Sufficiently Advanced To
                      Permit Preliminary Approval Of The Settlement . . . . . . . . . . . 16

VI.     THE CLASS IS PROPERLY CERTIFIED FOR
        SETTLEMENT PURPOSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.     Rule 23 of the Federal Rules of Civil Procedure Governs . . . . . . . . . 18

        B.     The Numerosity Requirement Is Satisfied . . . . . . . . . . . . . . . . . . . . 19

        C.     Common Questions of Law and Fact Bind the Class . . . . . . . . . . . . . 19

        D.     The Claims of the Plaintiff Are Typical of the Class Claims . . . . . . . . 20

        E.     The Class Representative Has Fairly and Adequately Protected the
               Interest of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        F.     For the Class As Alleged in the Amended Complaint, The
               Additional Requirements of Rule 23 Are Satisfied . . . . . . . . . . . . . . 22

VII.    THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE . . . 24

VIII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

**Cases**:

Ansari v. New York Univ.,
  179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Armstrong v. Board of School Directors,
  616 F.2d 305 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Buchholtz v. Swift & Co.,
  62 F.R.D. 581 (D.Minn. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Consolidated Rail Corp. v. Town of Hyde Park,
  47 F.3d 473 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Detroit v. Grinnell Corp.,
  495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Donaldson v. Pillsbury Co.,
  554 F.2d 825 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

EEOC v. Kovacevich "5" Farms,
  2007 U.S. Dist. LEXIS 32330 (E.D.Cal. April 18, 2007) . . . . . . . . . . . . . . . 19

Estrada v. FedEx Ground Package System, Inc.,
  154 Cal.App.4th 1 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fisher Bros. v. Cambridge-Lee Indus., Inc.,
  630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

Gautreaux v. Pierce,
  690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ghazaryan v. Diva Limousine, Ltd.,
  169 Cal. App. 4th 1524 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Glass v. UBS Fin. Servs.,
  2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) . . . . . . . . . . . 13-18

Hanlon v. Chrysler Co.,
  150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
  55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Jiffy Lube Sec. Litig.,
  927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Wash. Public Power Supply System Sec. Litig.,
  720 F. Supp. 1379 (D. Ariz. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Wirebound Boxes Antitrust Lit.,
  128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Workers' Compensation,
    130 F.R.D. 99 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

Jenkins v. Raymark Ind., Inc.,
    782 F.2d 468 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Jenson v. Continental Fin. Corp.,
    404 F. Supp. 806 (D. Minn. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Jordan v. County of Los Angeles,
    669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Kirkorian v. Borelli,
    695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lockwood Motors, Inc. v. General Motors Corp.,
    162 F.R.D. 569 (D. Minn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 23

Louie v. Kaiser Found. Health Plan, Inc.,
    2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lyons v. Marrud, Inc.,
    [1972-1973 Transfer Binder] Fed. Sec. L. Rep.
    (CCH) Paragraph 93,525 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.,
    618 F.3d 988 (9th Cir 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Officers for Justice v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,
    323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Prince v. CLS Transportation, Inc.,
    118 Cal.App.4th 1320 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
    390 U.S. 414 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Reed v. General Motors Corp.,
    703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Slaven v. BP Am., Inc.,
    190 F.R.D. 649 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Staton v. Boeing,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tate v. Weyerhaeuser Co.,
    723 F.2d 598 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Valentino v. Carter-Wallace, Inc.,
    97 F.3d 1227, 1234 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Weinberger v. Kendrick,
    698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

White v. Local 942,
    688 F.2d 85 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Statutes:**

29 C.F.R.§ 541.301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

California Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 515.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 1198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Labor Code § 2698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Secondary Authorities:**

2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) . . . . . . 9, 23, 26

Manual for Complex Litigation, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 26

3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003) . . . . . . . . . . . . . . 10

Plaintiff Jason Maitland ("Plaintiff") respectfully submits this memorandum of points and authorities in support of the motion for preliminary approval of settlement of the class action.

## I.   INTRODUCTION

Plaintiff and Defendant Marriott International, Inc. ("Defendant" or "Marriott") have reached a full and final settlement of the above-captioned class action, which is embodied in the Joint Stipulation of Class Action Settlement ("Settlement" or "Agreement") filed concurrently with the Court.[1]  By this motion, Plaintiff seeks preliminary approval from the Court of the Agreement (a copy is attached as Exhibit 1 to the Declaration of Norman Blumenthal, served and filed herewith), conditional certification of the Settling Class, approval of the Preliminary Approval Order, and scheduling of the Final Approval Hearing to determine final approval of the Settlement.

## II.   DESCRIPTION OF THE SETTLEMENT

Counsel for the Parties, after litigation and settlement negotiations, agreed to a settlement that is fair, reasonable and favorable to the Class, which includes "All those persons employed by Marriott International, Inc. as "Sous Chefs" and/or "Senior Sous Chefs" in full-service properties located in the State of California during the period February 19, 2006 through to the earlier of the date this Settlement receives Preliminary Approval or September 30, 2011."  (Agreement at ¶12.)  The Settling Class consists of about 62 current and former employees of Marriott.

After law and motion practice and exchanging written discovery requests and responses, the Settling Parties began to engage in settlement communications directly between counsel on or around April 24, 2011.  In furtherance of these communications, on May 4, 2011, Marriott provided aggregate information regarding the workweeks and fulltime equivalents ("FTEs") associated with the Settling Class, and on June 6, 2011,

_____

[1]  Capitalized terms in this Memorandum have the same meaning as contained in the Agreement.

1   provided a spreadsheet with detailed, anonymized, workweek and compensation data

2   associated with the Settling Class. Ultimately, on June 17, 2011, the parties reached an

3   agreement in principle regarding settlement of the class claims. Over the next several

4   months, the Settling Parties negotiated the full terms and language of this Agreement.

5   Declaration of Norman Blumenthal, ("Decl. Blumenthal") at ¶7. As a result of these

6   negotiations, the parties reached a settlement that they believe to be fair and reasonable

7   in light of the experience of the Parties' attorneys as counsel in other wage and hour

8   cases, and the uncertainties and cost of the years of litigation the Parties faced if the

9   settlement was not reached. Decl. Blumenthal, ¶7.

10      Under the terms to which the Parties have agreed, Defendant agrees to pay two

11   hundred ninety thousand dollars and no cents ($290,000.00) (the "Gross Settlement

12   Value" or "GSV") in consideration for the settlement and dismissal with prejudice of the

13   Lawsuit and the related release of all claims the Named Plaintiff and the members of the

14   Settling Class may have against Marriott, as contained in Paragraphs 31, 49, 53, 54, and

15   55 of this Agreement. (Agreement at ¶9.) The GSV will cover compensation to the

16   Settling Class, payment to the State of California for penalties under PAGA, additional

17   compensation to the Named Plaintiff as class representative, the cost of claims

18   administration and notice, and attorneys' fees and reimbursement of litigation costs and

19   expenses to Class Counsel. This is a non-reversionary settlement, which means that once

20   the Agreement is final and effective, no part of the GSV shall revert to Marriott.

21   (Agreement at ¶11.) Decl. Blumenthal, ¶5.

22      As per Paragraph Section 2.3 of the Stipulation, all costs, attorneys' fees, costs of

23   claims administration and notice, Enhancement Award, and the PAGA payment will be

24   deducted from the GSV. The Net Settlement Value shall be defined as the value of the

25   GSV less the above deductions. (Agreement at ¶43.) The Net Settlement Value shall

26   be allocated to the Settling Class as follows: (a) The Claims Administrator will

27   determine, from either the spreadsheet referenced in Paragraph 19 of the Agreement or

28

the resolution of a dispute pursuant to Paragraph 48 of the Agreement, the number of workweeks that a Settling Class member worked (the "Compensable Workweeks"); (b) The total number of Compensable Workweeks attributable to all Settling Class members who filed a timely and complete Claim Form will then be divided into the NSV, with the number of Compensable Workweeks as the denominator and the NSV as the numerator, with the resulting number determined to two (2) decimal places; and (c) The product of this calculation will be the Per Workweek Payment.  (Agreement at ¶50.)   The disbursement to each member of the Settling Class who returns a timely and complete Claim Form (the "Class Member Payment") shall be the number which results from multiplying the Per Workweek Payment times the number of Compensable Workweeks worked by a given member of the Settling Class.  (Agreement at ¶51.)  The amount of any settlement checks that are not cashed by Settling Class Members shall be paid to the State of California as unclaimed wages under the name of the Settling Class Member pursuant to the escheat procedures set forth in the California Code of Civil Procedure section 1300, et seq.  (Agreement at ¶43.)  Decl. Blumenthal, ¶6.

This is a good result for the members of the Class.  Liability in this case was uncertain because a jury may have found that some or all of the Class Members may have been exempt from certain pay requirements applicable to nonexempt employees. Indeed, some courts have found exemptions to apply in cases involving similar facts. Decl. Blumenthal, ¶8.  Moreover, there was further uncertainty as to whether class certification could have been achieved and maintained throughout the litigation. These defenses could have reduced the amount recovered or denied a recovery altogether to the members of the class.   Decl. Blumenthal, ¶8.

## III.    NATURE OF THE CASE

The Named Plaintiff Jason Maitland, who was formerly employed as a Sous Chef and Senior Sous Chef at the San Diego Marriott Del Mar, filed a complaint commencing the above-captioned action in the Superior Court of California for the County of Orange

1   on February 19, 2010 captioned *Maitland v. Marriott International, Inc.*, Orange County
2   Case No. 30-2010-00345780.  Decl. Blumenthal, ¶9.

3         On March 26, 2010, Marriott filed a notice of removal, and the action was
4   removed to the United States District Court for the Central District of California – Santa
5   Ana. The action is currently captioned *Jason Maitland, an individual, on behalf of*
6   *himself, and on behalf of all persons similarly situated, v. Marriott International, Inc.,*
7   *a Delaware Corporation; and DOES 1 through 10, inclusive*, and bears Case Number
8   SACV 10-00374-CJC (FMOx) (the "Lawsuit").  Decl. Blumenthal, ¶10.

9         Plaintiff filed a First Amended Complaint [Doc. No. 15] on August 10, 2010, and
10  subsequently filed a Second Amended Complaint [Doc. No. 22].  On October 22, 2010.
11  Marriott filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)
12  on November 22, 2010. [Doc. No. 24].  After full briefing, the Court issued an Order
13  Denying Defendant's Motion to Dismiss on January 18, 2011. [Doc. No. 29].
14  Subsequently, Marriott filed an Answer responding to the Second Amended Complaint
15  on February 1, 2011.  [Doc. No. 30].  Decl. Blumenthal, ¶11.

16        The Lawsuit generally alleges that, with regard to the Settling Class, Marriott:
17  failed to pay overtime compensation in accordance with California law; failed to provide
18  meal periods in conformance with California law; failed to provide rest breaks in
19  accordance with California law; failed to provide properly itemized wage statements in
20  accordance with California law; failed to comply with California Labor Code §§ 510,
21  515.5, 551, 552, 1194, 226, 226.7, 512, and 1198 et seq.; engaged in unfair business
22  practices in violation of California Business & Professions Code § 17200 et seq.; and
23  violated The California Labor Code Private Attorney General Act of 2004, California
24  Labor Code §§ 2698 et seq. ("PAGA"). The Lawsuit requests that the Settling Class be
25  certified as a class and subclass under Federal Rule of Civil Procedure 23, and as a
26  representative action under PAGA, and seeks unpaid wages, statutory and/or civil
27  penalties, liquidated damages, compensatory damages, injunctive relief, premium
28

pay/wages, restitution, declaratory relief, disgorgement, attorneys' fees and costs, interest, and such other relief as the Court may award.  Decl. Blumenthal, ¶3.

Although a settlement has been reached, Defendant specifically and generally denies all of the claims asserted in the Litigation, denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Litigation, and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever.  Defendant maintains that all of the Settling Class members were properly classified as exempt employees and that the members of the Settling Class were paid in accordance with all applicable federal, state, and local laws, regulations, and ordinances.  In particular, Defendant takes the position that the putative class members in question were bona fide managers who oversaw its culinary operations and supervised numerous other employees.  Nonetheless, the Settling Parties have agreed to avoid further litigation and to settle and resolve all existing and potential disputes, actions, lawsuits, charges and claims that the Settling Class has or may have against Marriott, to the fullest extent permitted by law and without any admission of liability or wrongdoing by either party. The Named Plaintiff and his counsel have concluded that the Settlement is fair, reasonable, and in the best interests of the putative members of the Settling Class and respectfully request that the Settlement be approved by the Court. Decl. Blumenthal, ¶4.

The parties have engaged in formal discovery.  The parties both served their initial disclosures.  Plaintiff also served two sets of written discovery, to which Defendant responded.   The parties met and conferred as to certain discovery responses of Defendant, and Defendant served supplemental responses. Defendant also served written discovery, to which Plaintiff responded.  The parties worked out a protective order and had noticed depositions, when the parties began their settlement discussions.  Decl. Blumenthal, ¶12.

Plaintiff contends that Defendant violated California and federal wage and hour

1  laws and that the Lawsuit is appropriate for class certification and collective certification
2  on the basis that the Plaintiff' claims meet the requisites for class certification.  While
3  continuing to deny that class certification would be proper for litigation purposes,
4  Defendant has stipulated that the above Settling Class of employees in California may
5  be certified for settlement purposes only.  (Agreement at ¶12.)  The Parties agree that
6  certification for settlement purposes is not an admission that class certification would be
7  proper if the class certification issue were litigated.  Further, this agreement is not
8  admissible in this or any other proceeding as evidence that the Settling Class could be
9  certified absent a settlement.  Solely for purposes of settling the lawsuits, the Parties
10 stipulate and agree that the requisites for establishing class certification with respect to
11 the Settling Class, as defined above, have been met and are met. Decl. Blumenthal, ¶13.

12        Class Counsel has conducted a thorough investigation into the facts of the class
13 action.  Class Counsel has diligently evaluated the Class Members' claims against
14 Defendant.  Prior to the Parties reaching an agreement to settle the Lawsuit, counsel
15 for Defendant provided Class Counsel with access to information concerning
16 Defendant's employment policies and practices and Class Member data, including data
17 reflecting the weeks worked by the Class Members and relevant salary information for
18 the positions at issue.  Based on the foregoing data and their own independent
19 investigation and evaluation, Class Counsel believes that the settlement with Defendant
20 for the consideration and on the terms set forth in this Stipulation is fair, reasonable, and
21 adequate and is in the best interest of the Class in light of all known facts and
22 circumstances, including the risk of significant delay, the likelihood that Defendant
23 would prevail on its defenses, and numerous potential appellate issues.  Decl.
24 Blumenthal at ¶14.

25 **IV.   PLAN OF ALLOCATION**

26        To implement the terms of this Settlement, Defendant agrees to establish a Gross
27 Settlement Value ("GSV") of two hundred ninety thousand dollars and no cents
28

1   ($290,000.00) to be distributed to the Settling Class members according to the plan of

2   allocation in the Agreement.  (Agreement at ¶9.)  All costs, attorneys' fees, costs of

3   claims administration and notice, Enhancement Award, and the PAGA payment will be

4   deducted from the GSV.  The Net Settlement Value shall be defined as the value of the

5   GSV less the above deductions.  (Agreement at ¶43.)  Decl. Blumenthal at ¶15.

6        The Net Settlement Value shall be allocated to the Settling Class as follows:  (a)

7   The Claims Administrator will determine, from either the spreadsheet referenced in

8   Paragraph 19 of the Agreement or the resolution of a dispute pursuant to Paragraph 48

9   of the Agreement, the number of workweeks that a Settling Class member worked (the

10  "Compensable Workweeks"); (b) The total number of Compensable Workweeks

11  attributable to all Settling Class members who filed a timely and complete Claim Form

12  will then be divided into the NSV, with the number of Compensable Workweeks as the

13  denominator and the NSV as the numerator, with the resulting number determined to two

14  (2) decimal places; and (c) The product of this calculation will be the Per Workweek

15  Payment.  (Agreement at ¶50.)  The disbursement to each member of the Settling Class

16  who returns a timely and complete Claim Form (the "Class Member Payment") shall be

17  the number which results from multiplying the Per Workweek Payment times the number

18  of Compensable Workweeks worked by a given member of the Settling Class.

19  (Agreement at ¶51.)  Decl. Blumenthal at ¶16.

20       This is a non-reversionary settlement, which means that once the Agreement is

21  final and effective, no part of the GSV shall revert to Marriott.  (Agreement at ¶11.)  The

22  amount of any settlement checks that are not cashed by Settling Class Members shall be

23  paid to the State of California as unclaimed wages under the name of the Settling Class

24  Member pursuant to the escheat procedures set forth in the California Code of Civil

25  Procedure section 1300, et seq.  (Agreement at ¶43.)  Decl. Blumenthal at ¶17.

26       Marriott shall deposit the full GSV in a non interest-bearing account to be

27  established by the Claims Administrator (as defined in Paragraph 15) no later than ten

28

1   (10) business days after receipt of notice of the Court's entry of a Preliminary Approval

2   Order in connection with this settlement. The GSV shall remain in said account, pending

3   occurrence of the Effective Date as defined in Section VII of the Agreement. The Claims

4   Administrator shall not disburse any portion of these funds until after the Effective Date.

5   Decl. Blumenthal at ¶17.

6          From the GSV, a payment of Five thousand dollars and no cents ($5,000.00) of

7   the GSV (the "PAGA Allocation") shall be allocated to civil penalty claims under the

8   Labor Code Private Attorney General Act of 2004, California Labor Code §§ 2698 et

9   seq.  Decl. Blumenthal at ¶18.

10         Subject to Court approval, the Settling Parties agree that Gilardi & Co., LLC will

11  be appointed as Claims Administrator.  Claims Administrator's fees and costs shall be

12  capped at ten thousand dollars and no cents ($10,000.00) which shall be paid from the

13  GSV.  (Agreement at ¶15.)  Decl. Blumenthal at ¶19.

14         Class Counsel will apply to the Court for an award of: (i) attorneys' fees in an

15  amount up to, but not more than, twenty-five percent (25%) of the GSV; and (ii)

16  reasonable and necessary costs and expenses (including expenses incurred by Named

17  Plaintiff in the prosecution of this action) in an amount up to, but not more than, twelve

18  thousand dollars and no cents ($12,000.00), which amounts awarded shall be paid from

19  the GSV.  (Agreement at ¶38.)  Class Counsel will also apply to the Court for an

20  additional award to the Named Plaintiff in an amount of five thousand dollars and no

21  cents ($5,000.00)  as reasonable additional compensation for the time and effort

22  expended by him in connection with the initiation and maintenance of the Lawsuit and

23  in consideration for the general release set out in Paragraph 55 of the Agreement  (the

24  "Enhancement Award").  (Agreement at ¶39.)  Class Counsel's application shall be

25  scheduled for determination at the Final Approval Hearing, but Class Counsel's

26  application shall be filed and served before the Class Notice is distributed and will be

27  posted on Class Counsel's website and the Claims Administrator's website.  Decl.

28

Blumenthal at ¶20.

## V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

When a proposed class-wide settlement is reached, the settlement  must be submitted to the court for approval.  Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, <u>Newberg on Class Actions</u> (3d ed. 1992) at §11.41, p.11-87.  Preliminary approval is the first of three steps that comprise the approval procedure for settlements of class actions.  See e.g. <u>Louie v. Kaiser Found. Health Plan, Inc.</u>, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008).  The second step is the dissemination of notice of the settlement to all class members.  The third step is a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement.  See <u>Manual for Complex Litigation</u>, Second §30.44 (1993).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." <u>Manual for Complex Litigation</u>, Second §30.44 at 229; <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621 n.3 (7th Cir. 1982); <u>Louie</u>, <u>supra</u>, at *7.  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective Class for their acceptance or rejection." <u>Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.</u>, 323 F. Supp. 364, 372 (E.D. Pa. 1970).  There is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by Class Counsel, is presented for court approval.  <u>Newberg</u>, 3d Ed., §11.41, p.11-88.  However, the ultimate question of whether the proposed settlement is fair, reasonable and adequate is made after notice of the settlement is given to the class members and a final settlement hearing is held by the Court.

## A.    The Role Of The Court In Preliminary Approval Of A Class Action Settlement

The approval of a proposed settlement of a class action suit is a matter within the broad discretion of the trial court. <u>Staton v. Boeing</u>, 327 F.3d 938, 959 (9th Cir. 2003). Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is "fair, reasonable and adequate." <u>In re Jiffy Lube Sec. Litig.</u>, 927 F.2d 155, 158 (4th Cir. 1991); <u>Manual for Complex Litigation</u>, Third, §§ 20.212. That determination is made only after notice of the settlement has been given to the members of the class and after the class members have been given an opportunity to voice their views of the settlement or to be excluded from the settlement class. See, e.g., 3B J. Moore, <u>Moore's Federal Practice</u> §§23.80 - 23.85 (2003).

In considering a potential settlement for preliminary approval purposes, the trial court does not have to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute (<u>Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 456 (2d Cir. 1974)), and need not engage in a trial on the merits. <u>Officers for Justice v. Civil Serv. Comm'n</u>, 688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). The court is not required to determine that certification of a settlement class is appropriate until the final settlement approval. <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 797 (3d Cir. 1995).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." <u>Weinberger v. Kendrick</u>, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424-25 (1968)). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. <u>Kirkorian v. Borelli</u>, 695 F. Supp. 446, 451 (N.D. Cal. 1988); <u>Reed v. General Motors Corp.</u>, 703 F.2d 170, 175 (5th Cir. 1983); <u>Weinberger</u>, 698 F.2d at 74; <u>Armstrong v. Board of School Directors</u>, 616 F.2d 305, 325 (7th Cir. 1980); <u>Fisher</u>

1  Bros. v. Cambridge-Lee Indus., Inc., 630 F. Supp. 482, 489 (E.D. Pa. 1985).  For

2  example, in Lyons v. Marrud, Inc., [1972-1973 Transfer Binder] Fed. Sec. L. Rep.

3  (CCH) Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and

4  competent counsel have assessed these problems and the probability of success on the

5  merits.  They have concluded that compromise is well-advised and necessary.  The

6  parties' decision regarding the respective merits of their position has an important

7  bearing on this case."  Id. at ¶ 92,520.

8  **B.      Factors To Be Considered In Granting Preliminary Approval**

9         A number of factors are to be considered in evaluating a settlement for purposes

10 of preliminary approval.  No one factor should be determinative, but rather all factors

11 should be considered.  These criteria have been summarized as follows:

12        If the proposed settlement appears to be the product of serious, informed,

13 non-collusive negotiations, has no obvious deficiencies, does not improperly grant

14 preferential treatment to class representatives or segments of the class, and falls within

15 the range of possible approval, then the court should direct that notice be given to the

16 class members of a formal fairness hearing, at which evidence may be presented in

17 support of and in opposition to the settlement.  Manual of Complex Litigation, Second

18 §30.44, at 229.  Here, the settlement meets all of these criteria.

19
20        **1.      The Settlement is the Product of Serious, Informed and Noncollusive Negotiations**

21        This settlement is the result of extensive and hard fought negotiations.  Defendant

22 denies each and every one of the claims and contentions alleged in this Action.

23 Defendant has asserted and continues to assert many defenses thereto, and has expressly

24 denied and continues to deny any wrongdoing or legal liability arising out of the conduct

25 alleged in the Action.  Nonetheless, Defendant has concluded that this Action be settled

26 in the manner and upon the terms and conditions set forth in the Stipulation in order to

27 avoid the expense, inconvenience, and burden of further legal proceedings, and the

28

1   uncertainties of trial and appeals.  Defendant has decided to put to rest the Released

2   Claims of the Settling Class.

3         Settlement negotiations took place between experienced counsel.  Counsel for the

4   Parties, after settlement negotiations conducted over several months, reached an

5   agreement, based upon the experience of counsel and the uncertainties of protracted

6   litigation.  Decl. Blumenthal at ¶5.  Most importantly, Plaintiff and Class Counsel

7   believe that this settlement is fair, reasonable and adequate.  By reason of the settlement,

8   Defendant has agreed  to establish a Gross Settlement Value ("GSV") of two hundred

9   ninety thousand dollars and no cents ($290,000.00) to be distributed to the Settling Class

10  members according to the plan of allocation in the Agreement, as payment in full of all

11  of the Class claims arising from the events described in the Lawsuit, including Class

12  Counsel's attorneys' fees and expenses, the Class Representative's Enhancement

13  Award, costs of claims administration and notice, and the PAGA payment.  (Agreement

14  at ¶43.)

15        Class Counsel has conducted a thorough investigation into the facts of the class

16  action, including an extensive review of relevant documents and data, formal discovery,

17  and a diligent investigation of the Settling Class Members' claims against Defendant.

18  Decl. Blumenthal, ¶14.  Based on the foregoing documents and data, and their own

19  independent investigation and evaluation, Class Counsel is of the opinion that the

20  settlement with Defendant for the consideration and on the terms set forth in the

21  Agreement is fair, reasonable, and adequate and is in the best interest of the class in light

22  of all known facts and circumstances, including the risk of significant delay, defenses

23  asserted by Defendant, and numerous potential appellate issues.  Defendant and

24  Defendant's counsel also agree that the Settlement is fair and in the best interest of the

25  Settling Class Members.

26        Plaintiff and Class Counsel recognize the expense and length of continuing to

27  litigate and trying this Lawsuit against Defendant through possible appeals which could

28

1    take several years.  Class Counsel has also taken into account the uncertain outcome and

2    risk of litigation, especially in complex actions such as this litigation.  Class Counsel is

3    also mindful of and recognize the inherent problems of proof under, and alleged defenses

4    to, the claims asserted in the Class Action.  Based upon their evaluation, Plaintiff and

5    Class Counsel have determined that the settlement set forth in the Agreement is in the

6    best interest of the Class Members.  Decl. Blumenthal, ¶21.

7         Here the negotiations have been hard-fought and aggressive with capable

8    advocacy on both sides. Decl. Blumenthal, ¶22.  Accordingly, "[t]here is likewise every

9    reason to conclude that settlement negotiations were vigorously conducted at arms'

10   length and without any suggestion of undue influence."  In re Wash. Public Power

11   Supply System Sec. Litig., 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

12
13   **2.     The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval**

14        The proposed Settlement herein has no "obvious deficiencies" and is well within

15   the range of possible approval.  All Settling Class Members will receive an opportunity

16   to participate in and receive payment.

17        In advance of negotiations, Class Counsel received class data concerning

18   workweeks and FTEs (full time equivalent employees), which permitted Class Counsel

19   to make a settlement demand.  Decl. Blumenthal at ¶6.  Based upon the investigation of

20   Class Counsel and data prepared, Plaintiff's initial settlement demand was $650,568.75.

21   Defendant contended that any potential liability was far lower, and that Defendant's

22   defenses would negate any recovery altogether.  Using the estimates presented by Class

23   Counsel, the settlement of $290,000, before deductions, represents at least 44% of the

24   initial settlement demand, assuming these amounts could be proven at trial.  Clearly the

25   goal of this litigation has been met.   Decl. Blumenthal, ¶ 6.

26        In Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27,

27   2007) the federal district court for the Northern District of California recently approved

28

1  a settlement of an action claiming unpaid overtime wages where the settlement amount

2  constituted approximately 25% to 35% of the estimated actual loss to the class.   Here

3  the settlement consideration constitutes a reasonable percentage of the estimated actual

4  overtime loss to the class.

5  In <u>Glass</u>, the federal court ruled that the settlement which represented

6  approximately 25 to 35% of the loss to the class was fair, reasonable, and adequate.  <u>Id.</u>

7  at 28.  A fortiori, this settlement is most certainly entitled to preliminary approval.

8  Where both sides face significant uncertainty, the attendant risks favor settlement.

9  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of

10  defenses asserted by Defendant presented serious threats to the claims of Plaintiff and

11  the other Class Members. Defendant likely would contend that Defendant's employment

12  practices complied with all applicable Labor laws.

13  For example, Defendant contended that Class Members were barred from recovery

14  by the "executive exemption" and or the "professional exemption."  After the settlement

15  was reached at mediation, the Court of Appeal issued the decision in *United Parcel*

16  *Service Wage & Hour Cases*, 190 Cal. App. 4th 1001 (Dec. 9, 2011), which addresses

17  the executive exemption at issue in this case.  Accordingly, were litigation to continue,

18  Defendant would be able to argue that the *United Parcel* decision provides significant

19  support for their exemption claim.  This new decision could result in a judgment in favor

20  of Defendant.  In addition, the analogous federal regulations provided that under federal

21  law, an executive chef or sous chef could qualify for the professional exemption.  29

22  C.F.R. § 541.301(6).  If successful, Defendant's defenses could eliminate or substantially

23  reduce any recovery to the Class.  While Plaintiff believes that these defenses could be

24  overcome, Defendant maintains these defenses have merit and therefore present a serious

25  risk to recovery by the Class.  Decl. Blumenthal at ¶23.

26  There was also a significant risk that, if the Actions were not settled, Plaintiff

27  would be unable to obtain class certification and thereby not recover on behalf of any

28

employees other than themselves.  Defendant forcefully opposed class certification, arguing that individual issues precluded class certification.  While other cases have approved class certification in wage and hour claims, class certification in this action would have been hotly disputed and was by no means a foregone conclusion.  Decl. Blumenthal at ¶24.

After vigorous negotiations, the Parties agreed to the Settlement of $290,000.  Recognizing the potential risks, both sides agreed.  As the federal court recently held in Glass, where the parties faced uncertainties similar to those here:

> In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and likely duration of further litigation likewise favors the settlement. Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely  would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal. "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement."  See In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).

Here, the risk of further litigation is substantial.

### 3.    The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments Of The Class

The relief provided in the settlement will benefit all Class Members equally.  The settlement does not improperly grant preferential treatment to the Class Representative or any individual segments of the Class.

Each Settling Class Member, including the Plaintiff, will be entitled to cash payment based on the plan of allocation. Decl. Blumenthal at ¶6. Each Class Member's Payment will be determined as follows:

The Net Settlement Value shall be allocated to the Settling Class as follows:  (a) The Claims Administrator will determine, from either the spreadsheet referenced in Paragraph 19 of the Agreement or the resolution of a dispute pursuant to Paragraph 48 of the Agreement, the number of workweeks that a Settling Class member worked (the "Compensable Workweeks"); (b) The total number of Compensable Workweeks

attributable to all Settling Class members who filed a timely and complete Claim Form will then be divided into the NSV, with the number of Compensable Workweeks as the denominator and the NSV as the numerator, with the resulting number determined to two (2) decimal places; and (c) The product of this calculation will be the Per Workweek Payment.  (Agreement at ¶50.)  The disbursement to each member of the Settling Class who returns a timely and complete Claim Form (the "Class Member Payment") shall be the number which results from multiplying the Per Workweek Payment times the number of Compensable Workweeks worked by a given member of the Settling Class. (Agreement at ¶51.)  Decl. Blumenthal at ¶16.

In addition, the Class Representative will apply to the trial court for a service award of $5,000.   (Agreement at ¶ 39.)  In <u>Glass</u>, the district court awarded each of the class representatives in an overtime wages class action a service award of $25,000. <u>Glass</u>, 2007 U.S. Dist. LEXIS 8476 at *51-52.  The payment of service payment in this amount to the named plaintiff in a wage and hour class action is approved by settled authority, and the requested service payment in the amount of $5,000 each is reasonable in this case in light of the amount approved in <u>Glass</u> and other decisions.[2]

**4.    The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**

The stage of the proceedings at which this settlement was reached also militates in favor of preliminary approval and ultimately, final approval of the settlement.  Class Counsel has conducted a thorough investigation into the facts of the class action.  Class Counsel began investigating the Class Members' claims before this action was filed. Class Counsel served extensive written discovery on Defendant.  Defendant produced

---

[2]  Courts have held that a service award of $5,000 is presumptively reasonable.  See *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, 2009 U.S. Dist. LEXIS 101586, 2009 WL 3562871, *5 (N.D. Cal. Oct. 27, 2009) (noting "a $5,000 payment is presumptively reasonable".)  At final approval, Plaintiff will fully explain the services, risks and legal authority which support the requested service award.

documents in response to the discovery, which documentation Class Counsel reviewed. Therefore, most of the discovery necessary to move for class certification was performed by the parties, with only depositions remaining to be conducted.  Decl. Blumenthal at ¶25.

Class Counsel also obtained production of employment and payroll records produced through informal discovery.  Class Counsel engaged in an extensive review and analysis of the relevant documents and data.  Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.  Decl. Blumenthal at ¶26.

Based on the foregoing documents and data and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in the Stipulation is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and numerous potential appellate issues. Defendant and Defendant's counsel also agree that the Settlement is fair and in the best interest of the Settling Class Members.  There can be no doubt that Counsel for both parties possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.     Decl. Blumenthal at ¶27.

In Glass, the Northern District of California recently granted final approval of an overtime and meal wage action although in Glass no formal discovery had been conducted prior to the settlement:

> Here, no formal discovery took place prior to settlement. As the Ninth Circuit has observed, however, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." See In re Mego Financial Corp. Securities Litigation, 213 F.3d at 459.

2007 U.S. Dist. LEXIS 8476 at *14.

Here, Class Counsel was in a better position to evaluate the fairness of this settlement as in <u>Glass</u> because they conducted significant formal discovery and informal discovery as well as independent investigations and due diligence to confirm the accuracy of the information supplied by Defendant.

## VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES

The proposed settlements meet all of the requirements for certifying a settlement class under F.R.C.P. §23(b)(2) as demonstrated below, and therefore, the Court may appropriately approve the Settling Class as defined in the Stipulation.  This Court should conditionally certify a class for settlement purposes only that consists of "All those persons employed by Marriott International, Inc. as "Sous Chefs" and/or "Senior Sous Chefs" in full-service properties located in the State of California during the period February 19, 2006 through to the earlier of the date this Settlement receives Preliminary Approval or September 30, 2011."  (Agreement at ¶12.)  The Settling Class consists of about 62 current and former employees of Marriott.

### A.   Rule 23 of the Federal Rules of Civil Procedure Governs

Plaintiffs seek certification of this Lawsuit for settlement purposes under F.R.C.P §23(b)(3).  This portion of rule 23 applies to class actions where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

To maintain a class action under rule 23(b)(3), the four prerequisites of F.R.C.P. Rule 23(a) must first be satisfied.  These prerequisites are referred to as numerosity, commonality, typicality, and adequacy of representation, and are set forth in Rule 23(a) as follows:

(1)   the class is so numerous that joinder of all members is impracticable,
(2)   there are questions of law or fact common to the class,
(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4)   the representative parties will fairly and adequately protect the interests of the class.

While Defendant disputes that the Plaintiffs can satisfy any of these requirements, the Parties agree that, for purposes of settlement, these requirements may be satisfied in this case, and therefore, the proposed Settling Class should be certified for purposes of settlement only.

## B.   The Numerosity Requirement Is Satisfied

Rule 23(a) merely requires that the class be "so numerous that joinder of all members is impracticable."   F.R.C.P. §23(a).   "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." EEOC v. Kovacevich "5" Farms, 2007 U.S. Dist. LEXIS 32330 at *57 (E.D.Cal. April 18, 2007); see also Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998); Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D. 569, 574 (D. Minn. 1995).   In Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), the Court held that "numerosity is presumed at a level of 40 members."   The Ninth Circuit observed that classes with fewer than 70 members have been certified in numerous cases. Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 n.10 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) (noting that classes with fewer than 70 members have been certified in numerous cases).

Here, the Settling Class is composed of about 62 Settling Class Members, which is sufficiently numerous for settlement purposes.   Decl. Blumenthal at ¶28.

## C.   Common Questions of Law and Fact Bind the Class

Rule 23(a) requires that there be a common question of law or fact.   There is no requirement that the members of the class be identically situated, only that there exists one or more factual or legal questions common to all members.   Jenson v. Continental

1   Fin. Corp., 404 F. Supp. 806 (D. Minn. 1975).  This threshold of "commonality" is not

2   particularly high.  Jenkins v. Raymark Ind., Inc., 782 F.2d 468, 472 (5th Cir. 1986).  The

3   fundamental question is whether the resolution of the common legal or factual questions

4   would affect all or a substantial number of the class members.  Jenkins, supra, 782 F.2d

5   at 472.  Indeed, if a claim "arises out of the same legal or remedial theory, the presence

6   of factual variations is normally not sufficient to preclude class action treatment."

7   Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977), cert. denied, 434 U.S.

8   856 (1977).

9         Rule 23(a) is satisfied where "the course or conduct giving rise to the cause of

10  action affects all class members, and at least one of the elements of that cause of action

11  is shared by all of the class members."  Lockwood Motors, 162 F.R.D. at 575.   This

12  requirement is met if common questions of liability are present, even if there may be

13  individual variations.   In re Workers' Compensation, 130 F.R.D. 99, 104 (D. Minn.

14  1990).

15        Here, common questions of law and fact, as alleged by the Plaintiff, are present,

16  specifically the question of whether the Settling Class Members employed by Defendant

17  were "exempt."  Decl. Blumenthal, ¶28.  Defendant disputes that commonality exists for

18  purposes of a litigation class, but does not oppose such a finding for purposes of this

19  settlement only.

20        **D.     The Claims of the Plaintiff Are Typical of the Class Claims**

21        The typicality requirement of Rule 23(a) requires that the members of the class

22  have the same or similar claims as the named plaintiff.  "The typicality requirement is

23  met when the claims of the named plaintiff arise from the same event or are based on the

24  same legal theories."  Tate v. Weyerhaeuser Co., 723 F.2d 598, 608 (8th Cir. 1983).  In

25  Hanlon v. Chrysler Co., 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit held that

26  "[u]nder the rule's permissive standards, representative claims are 'typical' if they are

27  reasonably coextensive with those of absent class members; they need not be

28

substantially identical." 50 F.3d at 1020. Typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members." Stanton, supra, at 957.

In the instant case, there can be little doubt that the typicality requirement is fully satisfied. The Plaintiff, like every other member of the Settling Class, was employed by Defendant, was classified as "exempt," and was not paid overtime for overtime hours worked. The Plaintiff, like every other member of the Settling Class, claims compensation as a result of the exempt classification, including compensation for unpaid overtime and for missed meal periods. Thus, the claims of both the Plaintiff and the members of the Settling Class arise from the same course of conduct by Defendant, involve the same issues, and are based on the same legal theories. Decl. Blumenthal, ¶28. The typicality requirement of Rule 23 is met as to the common issues presented in this case. While Defendant disputes that Plaintiff has claims typical of the individuals he purports to represent, Defendant does not oppose a finding of typicality for purposes of this settlement only.

**E.      The Class Representative Has Fairly and Adequately Protected the Interest of the Class**

The Class Representative provided adequate representation of the interests of the class in that: (a) their attorneys are competent, experienced in class litigation and generally able to conduct the proposed litigation; and (b) the Class Representative do not have interests antagonistic to those of the class. White v. Local 942, 688 F.2d 85, (9th Cir. 1982). Simply put, Rule 23 asks whether the Class Representative will vigorously prosecute on behalf of the class and have a basic understanding of the claims. This requirement has been met here. First, Plaintiff is well aware of his duties as the representatives of the class and has actively participated in the prosecution of this case to date. Plaintiff effectively communicated with Class Counsel, providing documents to Class Counsel and participated extensively in discovery and investigation of the action. The personal involvement of the Plaintiff was essential to the prosecution of the

action and the success of the mediation.  Decl. Blumenthal, ¶28.  Second, the Plaintiff retained competent counsel who have extensive experience in class actions.  See Decl. Blumenthal at ¶29.  Class Counsel has extensive experience in class action litigation in California and throughout the country.  Class Counsel has been involved as class counsel in over two hundred (200) class action matters, including many wage and hour class actions.  See e.g., Resume, attached as <u>Exhibit 2</u> to the Decl. Blumenthal at ¶29.  Third, there is no antagonism between the interests of the Plaintiff and those of the Settling Class.  Both the Plaintiff and the Settling Class Members seek monetary relief under the same set of facts and legal theories.  Under such circumstances, there can be no conflicts of interest, and adequacy of representation is presumed.  <u>In re Wirebound Boxes Antitrust Lit.</u>, 128 F.R.D. 268 (D. Minn. 1989).  While Defendant, pointing to the circumstances surrounding Plaintiff's termination of employment, disputes that the Plaintiff is adequate class representative, Defendant does not oppose such a finding for purposes of this settlement only.

### F. For the Class As Alleged in the Amended Complaint, The Additional Requirements of Rule 23 Are Satisfied

Since the requirements of Rule 23(a) have been satisfied, the Court now must look to Rule 23(b)(3) in order to determine whether a class should be maintained under one of the listed categories.  Under Rule 23(b)(3), a class action may be maintained if two basic conditions are met.  First, common questions must predominate over individual issues, and second, the class action must be superior to other available other methods for the fair and efficient adjudication of the controversy.

### 1. The Predominance Requirement Is Met

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members."  There is no bright line to determine whether common issues predominate.  A claim will meet the predominance requirement in cases where generalized evidence of the Defendant's conduct will prove or disprove

1  an element of the claim on a simultaneous class-wide basis.  The "fundamental question"

2  is whether the claim asserted is seeking a remedy to a "common legal grievance."

3  Lockwood Motors, 162 F.R.D. at 580; Buchholtz v. Swift & Co., 62 F.R.D. 581, 598

4  (D.Minn. 1973).  Further, the mere fact that there are certain issues that may need to be

5  determined on an individual basis does not preclude the satisfaction of the predominance

6  requirement.  See Newberg & Comte, Newberg on Class Actions §4.25 (3d ed. 1992).

7    Here, the adjudication of the common issues surrounding Defendant's uniform and

8  systematic exempt classification policy could establish Defendant's liability on a

9  class-wide basis.  Plaintiff contends that Defendant had engaged in a uniform course of

10  conduct with respect to overtime and meal periods which resulted in a systematic failure

11  to provide compensation as required by law and that Defendant's policies with respect

12  to these issues are uniform.  The only question is whether Defendant's conduct supports

13  a meritorious claim for liability.  Such suits challenging the legality of a standardized

14  course of conduct are generally appropriate for resolution by means of a class action.

15  Accordingly, Plaintiff would argue that the common issues of law and fact present in this

16  case predominate.  Decl. Blumenthal at ¶28.

17    In the context of wage and hour litigation, courts have often found that common

18  issues predominate where an employer treats the putative class members uniformly, even

19  where the party opposing class certification presents evidence of individualized

20  variations.  See e.g. Ghazaryan v. Diva Limousine, Ltd., 169 Cal. App. 4th 1524, 1538

21  (2008) (wage and hour claims  "routinely proceed as class actions"); Prince v. CLS

22  Transportation, Inc., 118 Cal.App.4th 1320, 1329 (2004); Estrada v. FedEx Ground

23  Package System, Inc., 154 Cal.App.4th 1, 14 (2007).

24    While Defendant disputes that the predominance requirement may be satisfied for

25  purposes of a litigation class, contending that individual factual inquiries into the day-to-

26  day job duties of individual class members would defeat class certification, Defendant

27  does not oppose such a finding for purposes of this settlement only.

28     **2.**  **The Superiority Requirement Is Met**

1    To certify a class, the Court must also determine "that a class action is superior to

2  other available methods for the fair and efficient adjudication of the controversy."

3  F.R.C.P. Rule 23 (b)(3). "Where classwide litigation of common issues will reduce

4  litigation costs and promote greater efficiency, a class action may be superior to other

5  methods of litigation." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir.

6  1996).

7    "If the plaintiffs' claims are substantiated, a question as to which the court

8  presently has no opinion, the class action mechanism is clearly the most efficient means

9  of resolving the many claims which may be asserted.  If the case were not handled as a

10 class, thousands of small claims would either be brought or unjustly abandoned.  The

11 first possibility would be a flood of cases, the second would involve individual claims

12 abandoned because of cost."  <u>In re Workers' Compensation.</u>, 130 F.R.D. at 110.

13   Here, a class action is the superior mechanism for adjudication of the claims as

14 pled by the Plaintiff.  While Defendant disputes that the superiority requirement may be

15 satisfied for purposes of a litigation class, Defendant does not oppose such a finding for

16 purposes of this settlement only.

17 **VII.    THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

18   The Parties have agreed upon procedures by which the Settling Class will be

19 provided with written notice of the Settlement similar to that approved and utilized in

20 hundreds of class action settlements.  The Parties have jointly drafted a Class Notice ,

21 attached to the Agreement as <u>Exhibit A</u> and is hereby for approval.

22   The Notice, drafted jointly and agreed upon by the Parties through their respective

23 counsel,  includes information regarding the nature of the Lawsuit; a summary of the

24 substance of the Settlement, including Defendant's denial of liability; the definition of

25 the Settling Class; the procedure and time period for objecting to the Settlement,

26 exclusion from the Settlement and participating in the Settlement; a statement that the

27 District Court has preliminarily approved the Settlement; and information regarding the

28 claims filing procedure and the opt-out procedure.  See <u>Exhibit 1</u> to the Agreement.

1   Attached to the Notice will be a Claim Form in the form attached to the Agreement as

2   Exhibit B.  The Claim Form shall be individualized for each member of the Settling

3   Class with information reflecting the time periods during the Class Period in which the

4   individual was employed in a class-qualifying capacity, and the number of workweeks

5   the individual worked (i.e., was compensated for) pursuant to the spreadsheet discussed

6   in Paragraph 19 of this Agreement.  Additionally, the Class Notice will contain the

7   estimated dollar value of the Class Member Payment.  (Agreement at ¶46.)

8          The Notice shall state that Class Members who wish to participate in the

9   settlement shall complete and return the Claim Form pursuant to the instructions

10  contained therein by first class mail or equivalent, postage paid.  The Notice shall also

11  provide that any Class Member may choose to opt out of the Class, and that any such

12  person who chooses to opt out of the Class will not be entitled to any recovery obtained

13  by way of the settlement and will not be bound by the settlement or have any right to

14  object, appeal or comment thereon.

15         The Notice will provide that all objections to the Settlement by anyone, including

16  members of the Settling Class, must be filed in the District Court and served upon all

17  counsel of record by no later than forty-five (45) days from the mailing of the Notice.

18  The deadline applies notwithstanding any argument regarding non-receipt of the notice.

19  All objections must state with particularity the basis on which they are asserted.  In

20  accordance with Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp., 618

21  F.3d 988 (9th Cir 2010), the application for attorneys' fees and costs will be filed when

22  the notice is distributed to the Settling Class, and the notice will direct Settling Class

23  Members to where they may view the application for attorneys' fees and costs.  Thus, all

24  Settling Class Members will have ample opportunity to review and comment on the

25  attorneys' fees and costs before the objection deadline.  The attorneys' fees and costs will

26  be heard in conjunction with the motion for final approval on the Final Approval Hearing

27  date as set by this Court in the Preliminary Approval Order.  Decl. Blumenthal at ¶30.

28         The notice also informs members of the Settling Class about the release.

Specifically, the notice explains that unless they exclude themselves, upon final approval they will release any and all claims asserted in the Lawsuit and including all claims that could be asserted based on the facts alleged in the complaint, against the the Marriott Releasees.  Decl. Blumenthal at ¶31.

This notice program was designed to meaningfully reach the largest possible number of potential Settling Class Members.  Before mailing, the Claims Administrator will process the class list through the United States Postal Service's National Change of Address database ("NCOA") and perform address searches.  (Agreement at ¶¶ 20-21.) The mailing and distribution of the Notice satisfies the requirements of due process, and is the best notice practicable under the circumstances and constitutes due and sufficient notice to all persons entitled thereto.  Decl. Blumenthal at ¶31.

This notice satisfies the content requirements for notice following the exemplar class notice in the Manual for Complex Litigation, Second §41.43.  This notice also fulfills the requirement that Class notices be neutral. Newberg, at §8.39.

## VIII.   CONCLUSION

Counsel for the Parties have committed substantial amounts of time, energy, and resources litigating and ultimately settling this case.  In the judgment of Plaintiff and Class Counsel, the proposed settlement is a fair and reasonable compromise of the issues in dispute in light of the strengths and weaknesses of each party's case.  After weighing the certain and immediate benefits of these settlements against the uncertainty of trial, and appeal, Plaintiff believes the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary approval.

Accordingly, Plaintiff respectfully requests that the Court preliminarily approve the proposed settlement and enter the proposed Preliminary Approval Order submitted herewith.

Dated: March 5, 2012             BLUMENTHAL, NORDREHAUG & BHOWMIK

By:___ /s/ Norman B. Blumenthal _____
Norman B. Blumenthal
Attorneys for Plaintiff